# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| **KENTON CRYE,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | 4:07-cv-35-AS-APR |
| ) | |
| **CATERPILLAR, INC.,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on a Motion for Summary Judgment filed by Defendant, Caterpillar, Inc. ("Caterpillar") on May 16, 2008. (Docket No. 16). Plaintiff Kenton Crye filed his response in opposition to the Motion on July 17, 2008, and Caterpillar filed its reply thereto on August 11, 2008. (Docket Nos. 22, 27). A hearing on the Motion was held before this Court in Lafayette, Indiana on November 7, 2008. For the reasons set forth below, this Court **GRANTS** Caterpillar's Motion for Summary Judgment.

## I. Background

Plaintiff Kenton Crye ("Mr. Crye") worked at Caterpillar from 1994 until his termination in September 2006. The crux of Mr. Crye's claims against Caterpillar are that Caterpillar retaliated against him: (1) for reporting allegations of sexual harassment on the part of his supervisor, and (2) for filing a worker's compensation claim. This alleged retaliation took the form of his suspension from the company and, ultimately, his termination.

During the relevant time frame, the management structure at Caterpillar over Mr. Crye was such that Mr. Crye reported directly to Carl Taskey from mid-2005 until mid-2006, then to Ryan Whitlock in mid-2006, followed by Kendall Kerfoot until Mr. Crye's termination. Taskey, Whitlock, and Kerfoot reported directly to Jon Stalcup, who, in turn, reported to the manager, Doug Morse.

Beginning in late 2004 or early 2005, Mr. Crye alleges that his supervisor, Carl Taskey, sexually harassed him by putting his arm around Mr. Crye and pretending to pose for a photograph, engaging in sexually explicit language about women in front of Mr. Crye, and making conversation with Mr. Crye while in the men's room. With regard to the latter charge, Mr. Crye alleges that in either October 2005, December 2005, or January 2006, he had returned from a doctor's visit for an injured shoulder and encountered Taskey in the rest room.[1] Mr. Crye claims that Taskey remarked that he understood Mr. Crye had injured his shoulder, asked what Mr. Crye was doing in the restroom and, "indicating his penis, told Crye that he 'Didn't need any help.'" (Docket No. 1 at 3).

Although Mr. Crye did not report the men's room incident at the time, he alleges that in April 2006, he told Taskey's manager, Doug Morse, about it. Mr. Crye further claims that

---

1     The exact date of the men's room incident is unclear because, at various points in the pleadings, Mr. Crye alleged different dates. Most recently, at the hearing, Mr. Crye's counsel alleged that the incident occurred in October, 2005; therefore, this date will be considered throughout the Summary Judgment Motion since the timing is most favorable to Mr. Crye. The Court notes that none of the dates alleged by Mr. Crye, each taken as accurate, would alter this Court's ultimate decision, and such a discrepancy does not constitute a genuine issue of material fact.

he previously reported five other instances of sexual harassment involving Taskey, yet he does not specify any details about those complaints. Additionally, Mr. Crye alleges that he told Char Carver, Caterpillar's human resources director, about the men's room incident.

Following Mr. Crye's complaint to Carver, another Caterpillar human resources director, Patty Slayton, took over the investigation, interviewing several people, including Mr. Crye, Taskey, and three others. Following Slayton's investigation, Mr. Crye was informed that the appropriate actions were being taken, and Taskey was advised to review the sexual harassment policy and was reminded not to touch or rub employees in the workplace.

During this time, there were several developments regarding Mr. Crye's breaks during the day. It is undisputed that Mr. Crye was allowed a twenty minute lunch break and two ten minute breaks during a normal work day. It is further undisputed that "Taskey told Crye that he could remain on break after the scheduled ending time when Crye was late starting a break, or when Crye missed an earlier break. This permission was reiterated by Crye's next supervisor, Kendal Kerfoot." (Docket No. 4 at 7). Beyond this, there appear to be many facts in dispute regarding Mr. Crye's breaks, and whether Caterpillar had a de facto policy of allowing longer breaks. Mr. Crye alleges that Caterpillar allowed extra time for breaks, as much as 7-12 extra minutes for breaks or lunch, and that supervisors would tell employees that they were allowed longer breaks on a one-on-one basis. Caterpillar claims that these

3

allegations are unsupported by the record evidence.[2]

On October 28, 2005, just after the men's room incident, Mr. Crye received a negative performance evaluation from Taskey for his dependability and initiative. Taskey commented that Mr. Crye needed to "improve on staying focused on his area of work" and "monitor his breaks and lunches and stay within the time allotted." It is undisputed that prior to October 2005, Mr. Crye had never received an unsatisfactory rating on a performance evaluation for attendance/dependability.

Following his negative performance evaluation, Mr. Crye received a great deal of additional negative feedback regarding his time management: in November 2005, Mr. Crye went through a coaching session with Stalcup regarding his misuse of company time and unprofessional behavior at a vending machine; in December 2005, Mr. Crye was given a verbal warning for misusing company time; in April 2006, Mr. Crye was given a written warning for misusing company time; and in August 2006, Mr. Crye was suspended for one day for misusing company time. Mr. Crye appealed the suspension to Caterpillar's peer review panel, who upheld the suspension. During the panel review, Mr. Crye did not bring up his earlier sexual harassment allegations.

Meanwhile, Mr. Crye had allegedly re-injured his shoulder and, in early September

---

2   Though there are facts in dispute regarding Caterpillar's de facto break policies, the operative inquiry at the Summary Judgment stage is whether those factual disputes create a genuine issue of material fact such that Summary Judgment would be inappropriate. Moreover, this Court must view all facts in the light most favorable to Mr. Crye, the nonmoving party. Accordingly, this Court will accept as fact Mr. Crye's allegations regarding Caterpillar's de facto policy for the purposes of this Summary Judgment inquiry.

4

2006, he filed a worker's compensation claim.

In late September, Caterpillar installed video equipment to monitor employee breaks and found that Mr. Crye had exceeded his allowable break time by 11-39 minutes at various points between September 22 and September 27, 2006. On September 28, 2006, Mr. Crye's employment was terminated by Stalcup for misusing company time.

On June 27, 2007, Mr. Crye brought suit against his former employer, Caterpillar, alleging violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and Indiana common law in the area of workers' compensation.

Mr. Crye dropped his ADEA and ADA claims in response to Caterpillar's Motion for Summary Judgment, leaving only his Title VII retaliation claim and his retaliation claim under Indiana worker's compensation law.

## II. Jurisdiction

Due to the fact that this case presents a federal question, this Court has jurisdiction over the matter according to 28 U.S.C. §1331. Leavell v. Kieffer, 189 F.3d 492, 495 (7th Cir. 1999). Jurisdiction for the pendant state claims is provided by 28 U.S.C. §1367.

## III. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact, the trial court has properly construed the claims, and the moving party is entitled to judgment as a matter of law.

5

Nebraska v. Wyoming, 507 U.S. 584, 590 (1993). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Moreover, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## IV. Discussion

A. Title VII Retaliation Claim

Title VII of the Civil Rights Act of 1964 was designed to protect workers against conduct which is so pervasive that a reasonable person would find it hostile and which the worker subjectively sees as abusive. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). To that end, Title VII contains an anti-retaliation provision to protect employees who object to an employer's discriminatory practices. 42 U.S.C. §2000e-3(a); see also, Lawrence D. Rosenthal, To Report or Not to Report: The Case for Eliminating the Objectively Reasonable Requirement for Opposition Activities Under Title VII's Anti-Retaliation Provision, 39 Ariz. St. L.J. 1127, 1132-33 (2007).

To establish a claim for retaliation, an employee can proceed under one of two methods of proof: the direct method and the indirect method.[3] Andonissamy v. Hewlett-Packard Co., Nos. 07-2387, 07-2390, slip op. at 14-15 (7th Cir. Nov. 7, 2008). Under the

---

3   In the instant case, Mr. Crye is proceeding under the direct method of proof. (Docket No. 22 at 13).

direct method of proof, an employee must demonstrate that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by his employer; and (3) there was a causal connection between the statutorily protected activity and the adverse action. Tomanovich v. City of Indianapolis, 457 F.3d 656, 662-63 (7th Cir. 2006).

The lengthy assessment of Mr. Crye's Title VII retaliation claim that follows, amounts to a finding that even if each of Mr. Crye's allegations are taken as fact, this Court, bound by sound Seventh Circuit precedent, simply cannot find a causal connection between Mr. Crye's protected activity and his negative performance evaluations and termination.

(1) Statutorily Protected Activity

As to the first element, there remains a dispute as to whether Mr. Crye complained about Taskey's behavior prior to the spring of 2006.[4] However, it is undisputed that Mr. Crye lodged an internal complaint to Caterpillar's Human Resources department in April 2006, in which he claimed he had been sexually harassed by Carl Taskey. See Tomanovich, 457 F.3d at 664 (holding that an official complaint filed with an employer is statutorily protected activity under Title VII so long as the complaint alleges that the discrimination

---

4   This Court is aware of two instances in Mr. Crye's deposition where he alleges that he had complained about Taskey's behavior prior to April 2006. First, he stated ". . . I had already been to Carl Taskey's office numerous times and Doug Morse's office numerous times complaining on Carl Taskey's demeanor, his behavior, and stuff that affected me and my work and hindered it." (Crye Deposition at 73). Next, he stated "Doug Morse was well aware that I have come too – or had went to his office on numerous occasions complaining on Carl Taskey's harassing and abrasive attitude toward me." (Crye Deposition at 125-26). Caterpillar, however, disputes that these prior complaints occurred, stating, "The record is clear that Crye made only one complaint of alleged harassment, and that complaint was made in Arpil 2006). (Docket No. 27 at 8).

occurred due to one's membership in a protected class); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1147 (7th Cir. 1997) (same). Accordingly, because his April 2006 complaint constitutes protected activity under Title VII, Crye has presented sufficient evidence to satisfy the first element under the direct method of proof, regardless of whether he made prior complaints.

(2) Adverse Employment Action

As to the second element, Mr. Crye argues that he suffered numerous adverse actions at the hands of his former employer. In addition to Mr. Crye's employment termination in September 2006, he alleges that he was monitored more closely than other employees, received a negative performance evaluation, and was given several warnings and suspensions, each as a result of his complaints about Taskey. The latter instances of alleged retaliation can only be retaliatory if they occurred *after* Mr. Crye engaged the protected activity of complaining about discrimination based upon sex.[5] See Tomanovich, 457 F.3d at 664 (holding that an employers actions against an employee could not be retaliatory where the employee had not first lodged a complaint that constituted a protected activity). However, this Court need not consider each allegation of retaliation at this step of the inquiry

---

5     This, once again, brings up the question of whether Mr. Crye's April 2006 complaint marks the first time he engaged in statutorily protected activity. Since at least two instances of Caterpillar's alleged retaliatory treatment of Mr. Crye–including increased monitoring and the negative performance evaluation–occurred prior to Crye's April 2006 complaint, they simply cannot constitute retaliation under Tomanovich unless Mr. Crye made previous complaints.

8

since Mr. Crye's employment termination clearly satisfies the second element under the direct method of proof.

(3) Causal Connection

Finally, turning to the third element of retaliation under the direct method of proof, an employee can rely on two types of evidence to show that the protected activity motivated the employer's action: "direct evidence" or "circumstantial evidence."[6] Lewis v. School Dist. # 70, 523 F.3d 730, 742 (7th Cir. 2008). See also, Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007) (noting that circumstantial evidence can constitute direct proof of discrimination, often through a series of inferences); (Atanus v. Perry, 520 F.3d 662, 671 (7th Cir. 2008) (stating that whether the evidence offered is "direct" or "circumstantial," the focus of the direct method of proof is whether the evidence "points directly" to a discriminatory reason for the employer's action).

Circumstantial evidence comes in three flavors: (1) suspicious timing; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employee did not deserve the termination and that the employer's reason for the termination is a pretext for discrimination. Volovsek v. Wis. Dep't of Agric., Trade, & Consumer Prot., 344 F.3d 680, 689-690 (7th Cir. 2003). Mr. Crye claims that he has presented evidence of all three types of circumstantial evidence.

---

6    In the instant case, Mr. Crye is relying upon circumstantial evidence of retaliation. (Docket No. 22 at 13).

9

First, with regard to suspicious timing, Mr. Crye argues that he has demonstrated that his negative performance evaluations came only after his repeated complaints about Taskey. Caterpillar counters that Mr. Crye complained only once about Taskey, and, since he was not terminated for a number of months thereafter, suspicious timing has not been demonstrated. Moreover, Caterpillar points out that there is no evidence supporting Mr. Crye's allegations of multiple complaints other than the affidavit of Mr. Crye himself.

However, Caterpillar's argument misses the mark. Although the only evidence supporting Mr. Crye's contention of his prior complaints comes from Mr. Crye himself, self-serving deposition testimony is not *per se* insufficient to defeat a motion for summary judgment. See Payne v. Pauley, 337 F.3d 767, 771 (7th Cir. 2003) (holding that so long as an affidavit is based on personal knowledge, a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion).

The problem with Mr. Crye's allegations of prior complaints is not that they are self-serving, but rather, that they are overly vague. For example, in his deposition testimony, Mr. Crye fails to identify when his prior complaints took place, or what the content of those complaints were. See supra n.4. Further, his deposition testimony fails to allege that his complaints specifically cited discrimination based upon sex, as is required for a complaint to constitute protected activity under Title VII. Tomanovich, 457 F.3d at 664. To the contrary, Mr Crye's evidence of his earlier complaints is wholly analogous to that of the plaintiff in Tamanovich, who the Seventh Circuit found failed to "support his

characterization of [his] grievance as a complaint about sexual harassment," and merely cited "to a single page in his deposition, wherein he stated that he spoke with the City regarding 'issues of harassment.'" Id. In that case, the Seventh Circuit held that the plaintiff's grievances failed to constitute protected activities for the purposes of a Title VII anti-retaliation claim. Similarly, even construing all facts in Mr. Crye's favor, this Court fails to see how Mr. Crye's complaints prior to April 2006 constitute protected activity.

As a result, Mr. Crye's suspicious timing argument amounts to an allegation that Mr. Crye was terminated from his employment five months after he engaged in protected activity in April 2006. This, however, is insufficient to establish circumstantial evidence of suspicious timing. See, e.g., Longstreet v. Ill. Dep't. of Corr., 276 F.3d 379, 384 (7th Cir. 2002) (holding that a four-month proximity was insufficient to establish a causal connection); Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000) (holding that a three-month gap alone could not reasonably support a causal connection for a retaliation claim). Moreover, even if Mr. Crye had established suspicious timing, this circuit has held that "suspicious timing alone rarely is sufficient to create a triable issue." Moser v. Indiana Dept. of Corrections, 406 F.3d 895, 905 (7th Cir. 2005); Andonissamy, Nos. 07-2387, 07-2390 at 14-15 (quoting Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004) ("On summary judgment in particular 'it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact.'").

Thus, this Court is not convinced that Mr. Crye has established a causal connection

11

between his statutorily protected activity and the adverse action through suspicious timing. Yet, even if Mr. Crye had established suspicious timing, additional circumstantial evidence would be necessary in order to establish a prima facie case of retaliation. However, Mr. Crye has failed to establish a causal connection through either of the remaining types of circumstantial evidence.

With regard to the second type of circumstantial evidence, Mr. Crye has failed to identify a similarly situated employee who received more favorable treatment. See Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). A similarly situated employee must be "directly comparable to [plaintiff] in all material respects." Atanus v. Perry, 520 F.3d 662, 673 (7th Cir. 2008); Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). In other words, Mr. Crye must show that he and an employee who had not complained of sexual harassment "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Bragg v. Potter, 92 Fed.Appx. 342, 345 (7th Cir. 2004)(citing Radue, 219 F.3d at 617-18).

Mr. Crye has identified only one employee whom he describes as being similarly situated: a man named Gregg Saddler who allegedly took a two hour nap on company time and was not fired. Beyond that, he has made generic statements that other employees were allowed extra break times. Such blanket statements fail to pass muster under the Seventh Circuit's guidelines. Mr. Crye has identified very little about Saddler other than the allegation that he took a two hour nap on company time and was not fired. This is a far cry

12

from showing that Saddler is directly comparable to Mr. Crye. Further, even if Mr. Crye had alleged that he and Saddler served under the same supervisor and were subject to the same standards, the alleged two hour nap is insufficient to make the two men "directly comparable" to one another. Mr. Crye's employment was not terminated for taking a nap on company time or for any one singular instance of abuse of company time. On the contrary, Mr. Crye's employment was terminated on account of what Caterpillar saw as a pervasive, ongoing problem with his abuse of break times.[7] As a result, even if Saddler was in all other ways analogous to Mr. Crye, an example of an employee who only abused company time on a single instance is not similarly situated to Mr Crye.

Finally, Mr. Crye alleges that he presented evidence that the he did not deserve the termination, and that Caterpillar's reason for his termination is a pretext for discrimination. Mr. Crye may establish pretext for his termination via "indirect evidence showing that the defendant['s] stated reasons are not credible." Rizzo v. Sheahan, 266 F.3d 705, 715 (7th Cir. 2001). Specifically, Mr. Crye must show "one of the following: (1) Defendant's explanation of Plaintiff's discharge had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) at least the reason stated was insufficient to warrant the [allegedly retaliatory action]." Id. at 715 (quoting Johnson v. Nordstrom, Inc., 260 F.3d 727, 732 (7th Cir. 2001)).

---

[7] Caterpillar points to the following instances of Mr. Crye's misuse of company time: (1) in October 2005, Mr. Crye was told he needed to improve his time management by Taskey; (2) in November 2005, Mr. Crye was told he needed to improve his time management by Stalcup; (3) in December 2005, Mr. Crye received a verbal warning for misuse of company time; and (4) in April 2006, Mr. Crye received a written warning for misuse of company time.

13

In the instant case, Caterpillar has provided a legitimate non-discriminatory reason for Mr. Crye's termination: misusing company time. Mr. Crye's response amounts to an argument that Caterpillar had an unwritten company policy allowing longer breaks and the fact that he was punished for adhering to that unwritten policy proves pretext. However, this Court disagrees.

According to Seventh Circuit precedent, pretext requires a plaintiff to present evidence that an employer has lied. Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 601 (7th Cir. 2001) (". . . without proof of a lie, no inference of discriminatory motive can be drawn."); Miller v. American Family Ins. Co., 203 F.3d 997, 1008 (7th Cir. 2000) ("Pretext is more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.").

Thus, the question of law before this Court is not whether Caterpillar had an unwritten policy of allowing lengthy breaks,[8] but whether Caterpillar processed an honest belief that Mr. Crye had been misusing company time. To that end, Caterpillar details a lengthy record of Mr. Crye's abuse of time, culminating in three days in which he was captured on video taking lengthy breaks. See supra n.7. Mr. Crye admits that he has no evidence to dispute Caterpillar's charges that he exceeded his allowable break time on the three days leading up

---

8   Assuming as this Court must at the summary judgment stage, that Caterpillar, in fact, had an unwritten policy allowing extra break time, Mr. Crye still cannot prove pretext because he was clearly on notice as of October 2005 that he was expected to abide by Caterpillar's written policy. Moreover, if Caterpillar had only applied its unwritten policy to employees who had not exercised their statutorily protected rights, Mr. Crye should have been able to find a similarly situated employee to whom Caterpillar applied its unwritten policy. He has failed to do so.

14

to his termination. (Crye Deposition at 101-02).

The unrebutted evidence clearly establishes that Mr. Crye would have been terminated even if Caterpillar had no retaliatory motive, due to Mr. Crye's misuse of company time, especially in the three days leading up to his employment termination. Because this is a valid nondiscriminatory basis for termination, and Mr. Crye has failed to show that this stated reason is not credible, Mr. Crye has failed to establish pretext.

As a result, Mr. Crye has failed to establish a causal connection between his employment termination and his protected activity. Thus, because Mr. Crye's retaliation claim fails, summary judgment is hereby **GRANTED** in favor of Caterpillar.

B. Worker's Compensation Retaliation Claim

Under Indiana law, employers can generally terminate an employment at any time, for a "good reason, bad reason, or no reason at all." Meyers v. Meyers, 861 N.E.2d 704, 706 (Ind. 2007). However, in Frampton v. Central Indiana Gas Co., the Indiana Supreme Court recognized a cause of action for retaliatory discharge based upon the explicit language of the Indiana Worker's Compensation Act. Donald Bregin v. Liquidebt Systems, Inc. and Sirva, Inc., No. 08-1390, slip op. at 5 (7th Cir. Nov. 19, 2008) (citing Frampton v. Central Indiana Gas Co., 297 N.E.2d 425 (Ind. 1973)).

In order to survive summary judgment on a claim for retaliation under Frampton, the employee must establish a causal connection between his termination and the filing of his workers' compensation claim. Hudson v. Wal-Mart Stores, Inc., 412 F.3d 781, 785 (7th Cir. 2005). Crye fails to make a sufficient causal connection here. He relies heavily on the

timing of his employment termination. However, Mr. Crye's argument omits a critical intervening event: the three days during which Mr. Crye was captured on video taking lengthy breaks. Moreover, timing evidence alone rarely creates a jury issue on causation. Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 594 (7th Cir. 2008).

Further, Mr. Crye cannot establish pretext by demonstrating that Caterpillar's explanation for the firing was either dishonest or "patently inconsistent with the evidence before the court." Hudson v. Wal-Mart Stores, Inc., 412 F.3d 781, 785 (7th Cir. 2005) (citing Markley Enters., Inc. v. Grover, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999)). Mr. Crye offers evidence that mirrors his pretext allegations for his Title VII claim, yet his argument here is similarly unavailing. Mr. Crye claims that his alleged abuse of company timing was a pretext for his employment termination simply because a jury could so infer. However, that is not the standard this Court must use in determining whether to grant summary judgment on the issue. Instead "[o]ur only concern is whether [the employer's] proffered explanation is a lie to cover-up for retaliation," and whether the employment action is "so patently inconsistent with the evidence that it suggests that retaliation was afoot." Hudson, 412 F.3d at 785. That is not the case here. To the contrary, Caterpillar has provided evidence that Mr. Crye was warned about his misuse of company time on numerous occasions leading up to his employment termination. See supra n.7. Thus, Mr. Crye has failed to establish a causal connection between his termination and the filing of his workers' compensation claim. Accordingly, summary judgment is hereby **GRANTED** in favor of Caterpillar on the worker's compensation retaliation claim.

## V. Conclusion

For the reasons stated herein, Mr. Crye's complaint fails to plausibly suggest that he has a right to relief. Accordingly, Defendant Caterpillar, Inc. is entitled to summary judgment under Federal Rule of Civil Procedure Fed. R. Civ. P. 56(a). Therefore, Defendant's Motion for Summary Judgment is hereby **GRANTED**. This case is now considered closed. Each party to bear its own costs.

**SO ORDERED**.
**DATED: December 3, 2008**

                                              /s/ ALLEN SHARP
                                       **ALLEN SHARP, JUDGE**
                                       **UNITED STATES DISTRICT COURT**